**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-----------------------------------------------------------x

| | |
|---|---|
| In re:<br>Michael S. Goldberg, LLC and<br>Michael S. Goldberg,<br>Debtors. | Chapter 7<br>Case Nos. 09-23370-JAM<br>09-23371-JAM |

-----------------------------------------------------------x

| | |
|---|---|
| James Berman, Chapter 7 Trustee for the<br>Estates of Michael S. Goldberg, LLC and<br>Michael S. Goldberg,<br>Plaintiff,<br>v. | Adv. Proc. No. 16-02042-JAM |
| Robert A. Landino, Scott A. LaBonte, Centerplan<br>Cranston, LLC, Centerplan North Haven, LLC,<br>Centerplan Smithfield, LLC, Centerplan<br>Middletown, LLC, Acquisition Holdings, LLC,<br>SAL Cranston, LLC, SAL North Haven, LLC,<br>SAL NH Investments, LLC, SAL Smithfield,<br>LLC, SAL Middletown, LLC, Siebar Middletown,<br>LLC, Centerplan College Square, LLC, College<br>Square LLC and Does 1-20,<br>Defendants. | November 6, 2019 |

-----------------------------------------------------------x

**OBJECTION OF THE DEFENDANTS, ROBERT A. LANDINO;**
**CENTERPLAN CRANSTON, LLC; CENTERPLAN NORTH HAVEN, LLC;**
**CENTERPLAN SMITHFIELD, LLC; CENTERPLAN MIDDLETOWN, LLC;**
**ACQUISITION HOLDINGS, LLC; SIEBAR MIDDLETOWN, LLC;**
**CENTERPLAN COLLEGE SQUARE, LLC; COLLEGE SQUARE LLC;**
**AND THE COUNTERCLAIM PLAINTIFF, CENTERPLAN NB, LLC,**
**TO THE TRUSTEE'S MOTION FOR PERMANENT STAY (ECF #172)**

**INTRODUCTION:**

The defendants, Robert A. Landino ("Landino"); Centerplan Cranston, LLC; Centerplan

North Haven, LLC; Centerplan Smithfield, LLC; Centerplan Middletown, LLC; Acquisition

Holdings, LLC; Siebar Middletown, LLC; Centerplan College Square, LLC; College Square,

{N5637875}

LLC and the counterclaim plaintiff, Centerplan NB, LLC (collectively, "the Landino Entities"), respectfully object to the plaintiff's Motion for Permanent Stay of this adversary proceeding (ECF #172) on the grounds that (a) this Court has already ruled on substantially the same motion, ordering that the previously-granted stay would remain in effect only through October 31, 2019, (b) extending the stay works an unfairly prejudicial hardship to the Landino Entities and (c) good cause does not otherwise exist for extending the (now-expired) stay. In support of their position, the Landino Entities represent as follows:

> A.    *This Court has already ruled on substantially the same motion previously filed by the Trustee.*

On September 30, 2019, the Trustee filed his Motion to Continue Existing Stay (see ECF #169, appended hereto as Exhibit A), through which he sought to stay this adversary proceeding, "pending further court order" (Id., p. 1). This Court granted that motion on October 2, 2019 (see ECF #170), extending the stay through October 31, 2019. The Trustee's latest motion is virtually identical to his prior motion, with the exception of certain non-substantive differences, namely the intermittent use of the terms, "permanent" and "permanently" in describing the stay which he seeks (see Motion for Permanent Stay, pp. 1, 6), as well as references to permanent stays that this Court and the District Court had entered in certain related proceedings, the latter of which is, candidly, entirely irrelevant to the question of whether a stay should be permanently imposed in *this* case.

The Trustee is, essentially, now seeking to get a second bite at the apple on this question. Having failed to file a Motion for Reconsideration of this Court's prior ruling on his earlier motion, the Trustee has resorted to a recycling exercise by presenting the same motion, but using the descriptors, "permanent" and "permanently" and referring to stays granted in *other* cases to

which the Landino Entities are *not* parties, as if to suggest that these distinctions are somehow meaningful and should inspire this Court to alter its prior ruling. The Landino Entities urge this Court to reject this inartful attempt to seek reconsideration of its prior order on such an untimely basis.

      *B.*      *The Trustee has overstated the issues regarding the need for expert discovery.*

      In his motion, the Trustee contends that a permanent stay of this adversary proceeding is merited because, "there remains substantial expert discovery to be conducted ..." with respect to the position taken by the Landino Entities in their Motion for Summary Judgment. See Motion for Permanent Stay, p. 6 (¶21). By way of background, in their motion, the Landino Entities appended five appraisal reports pertaining to the five parcels of real estate at issue in this action. These are retrospective reports providing the fair market valuation of those properties as of the respective dates of their allegedly fraudulent transfers. Apparently, the Trustee believes that "substantial expert discovery" is required to refute these opinions. Candidly, the Trustee's inability to procure five simple appraisal reports is hardly the result of being burdened with performing "substantial" discovery tasks.

      In fact, it is disingenuous for the Trustee to claim that valuation of the properties is truly an issue in dispute in this case. A careful reading of the Trustee's Second Amended Complaint reveals that nowhere does he allege that the Landino Entities furnished inadequate consideration in exchange for the assets they received.[1] Rather, the gravamen of the Trustee's Complaint is that: (1) the Landino Entities exchanged liquid assets (i.e., cash) for illiquid assets (i.e., the transferors' membership interests in certain limited liability companies that owned the

---

[1] Those assets consisted of membership interests in the lower tier entities that owned the membership interests in the upper tier entities that owned the five parcels of real estate at issue herein.

five parcels of commercial property at issue) [See ECF #82, at ¶¶60, 64 (p. 19), ¶70 (p. 20), ¶75 (pp. 20 – 21), ¶79 (p. 21), appended hereto as Exhibit B], (2) somehow, such illiquid assets found their way into the hands of the co-defendant, Scott A. LaBonte ("LaBonte") and (3) the Landino Entities somehow knew that this would happen—all as part of a scheme to hinder, defraud and delay the Trustee in his efforts to collect a debt from LaBonte.

Notwithstanding the fact that this is a fraudulent transfer action, brought pursuant to Connecticut's version of the Uniform Fraudulent Transfer Act ("CUFTA"), C.G.S. §§52-552a, et seq. (a statute that, incidentally, contains nothing suggesting that the exchange of illiquid assets for liquid assets is a violation thereof), the Trustee has, remarkably, not bothered to exam the valuation of the five properties in question heretofore.  The failure to examine and research such a fundamental question should not serve as an excuse to impose a permanent stay on this action.

Despite the passage of more than a year since the filing of the Landino Entities' summary judgment motion, there is no visible indication that the Trustee has done anything other than to complain that the Landino Entities are not playing fairly *because they elected to file a summary judgment motion in advance of the deadline for the filing of dispositive motions in this case.* There is no reason why the undertaking of retrospective appraisals of five pieces of commercial property should require so much time and effort.  The five properties at issue are all indistinct commercial properties located in cities in Connecticut and Rhode Island.  The dates of their respective transfer are well known to the Trustee.  In short, this process, had it been undertaken promptly, would have been entirely completed by now.  The Trustee's law firm, as the Court is well aware, maintains a robust practice of representing debtors and, undoubtedly, knows many

competent real estate appraisers upon whom he can call to perform this routine type of assignment.

C.     *The plaintiff's October 22, 2018 motion is now moot.*

The Trustee also makes much of the fact that his Motion, Pursuant to FRCP 56(d) to Deny, or Defer Decision on, Defendants' Summary Judgment Motion, Pending Completion of Expert Discovery (ECF #146) has never been adjudicated by this Court. The Landino Entities' Motion for Summary Judgment was filed on October 9, 2018. A total of 101 days elapsed between that date and the date that this Court ordered a stay of the proceedings in this adversary proceeding on January 18, 2019. Thereafter, the case remained stayed from January 18 – October 31, 2019, a period of some 286 days. Thus, 397 days elapsed between the filing of the Motion for Summary Judgment and the date that the stay expired, the first 101 days of which occurred when there was *no* stay in effect.

Certainly, during that 101-day period, the Trustee had ample opportunity to (a) review the appraisal reports disclosed by the Landino Entities, (b) retain his own real estate valuation expert to review the reports and assist him in preparing for the deposition of the Landino Entities' expert, (c) notice and conduct that deposition and (d) disclose his own expert. Under the terms of the now-superseded Fifth Amended Case Management Order (ECF #138, appended hereto as Exhibit C), the Trustee had only 35 days from the service of the "opening expert reports" in which to furnish his own "responsive expert reports" (Id., p. 2).

Because the Landino Entities disclosed their sole expert on October 9, 2019 (ECF #143, appended hereto as Exhibit D), the passage of 35 days would bring us to the date of November 13, 2018. Yet, apparently, not only did the Trustee fail to take any of the above steps during that

35-day period, he did not do so for the *next* 66 days. And, also apparently, despite the fact that the undertaking of settlement efforts virtually ended following the conclusion of an unsuccessful one-day mediation with Magistrate Fitzsimmons on May 1, 2019, the Trustee has done nothing since then.

Therefore, the fact that the Trustee's October 22, 2018 motion was never decided is immaterial. The Trustee has received all that he sought through that motion, and then some. Specifically, the order proposed by the Trustee, granting that motion provided, in relevant part, that "expert discovery shall proceed in accordance with the deadlines of the August 2, 2018, [sic] Fifth Amended Case Management Order" (see ECF #146-2). That order, in turn, provides that the deadline for responsive expert reports was January 4, 2019 (see ECF #138, p.,2, appended hereto as Exhibit E), i.e., 14 days before the initial stay of this action even went into effect. Stated differently, the Trustee has received exactly what he asked for, notwithstanding the fact that the Court never adjudicated his motion. More to the point, the Trustee never provided any responsive expert reports by January 4, 2019.

> D.    *The RICO action filed by the Trustee admits that it would be "futile" to pursue this adversary proceeding because of Landino's poor financial condition, yet the Trustee has named him as a defendant in the RICO action anyway.*

The Trustee, in a statement that defies both logic and common sense, contends that the continuation of this adversary proceeding is "futile" (see Complaint in 3:19-cv-01533-VLB, ECF #1, hereinafter "the RICO Complaint," at p. 63, appended hereto as Exhibit F). In support of this contention, the Trustee further avers, "The named defendants in the Landino Action[2] include 13

---

[2] "The Landino Action" is a defined term that refers to this adversary proceeding. RICO Complaint, p. 63, ¶285.

entities, all of which have been dissolved, and R. Landino[3], who within the last several months had a $39 million-dollar [sic] judgment entered against him in connection with construction failures at Dunkin Donuts Park in Hartford." Id., p. 66, ¶295. Clearly, the Trustee believes that Landino is judgment-proof. That being the case, what is to be gained by suspending the adversary proceeding pending against him and, instead, pursuing a brand-new *second* lawsuit against him in the District Court? Does the Trustee believe that a judgment against Landino in the District Court action will be any more collectible than a judgment against him in this adversary proceeding?

On this score, the Trustee appears to be suggesting that his willingness to prosecute the RICO lawsuit on a contingent fee basis should excuse him from continuing to litigate an adversary proceeding that he, himself, initiated. The Trustee contends that the scarce resources remaining in the debtors' estate should not be expended on the further prosecution of this adversary proceeding. See Motion to Stay, p. 6, ¶22. Were this not so disingenuous a statement, it would be almost comical. It is remarkable that, now that the estate is nearly emptied of its assets, the Trustee has suddenly decided to act frugally.

A cursory review of the numbers in the underlying bankruptcy case reveals the self-serving quality of the Trustee's representations in this regard. As the chart below indicates, the Trustee's counsel has made seven interim fee applications, the first six of which were subject to a 10% holdback on its fees:

---

[3] "R. Landino" refers to Landino. RICO Complaint, p. 8, ¶24.

| Date of Order Granting Application for Compensation | ECF # | Amount of Fees Approved | Amount of Costs Approved | Amount of Holdback |
|---|---|---|---|---|
| 12/16/2010 | ECF #336 | $ 597,346.00 | $ 22,433.77 | $ 59,734.60 |
| 12/12/2011 | ECF #695 | $2,042,276.00 | $113,604.17 | $204,227.60 |
| 12/06/2012<br>12/20/2012 | ECF #1058<br>ECF #1075 | $2,062,172.23 | $ 42,665.46<br>$105,027.60 | $206,217.23 |
| 04/04/2014 | ECF #1288 | $1,268,262.25 | $ 42,092.04 | $126,826.23 |
| 11/12/2015 | ECF #1395 | $1,266,075.00 | $ 26,602.41 | $126,607.50 |
| 12/13/2017 | ECF #1488 | $1,016,423.05 | $ 14,281.39 | $101,642.31 |
| 07/31/2017 | ECF #1751 | $1,646,930.50 | $ 49,945.39 | $       .00 |
| **TOTALS** | | $9,899,485.03 | $416,650.23 | $825,255.47 |

In addition to the foregoing amounts, 11 other professionals have applied for compensation, ten of whom have received orders granting their respective applications, and the eleventh of which has the hearing on its application scheduled for November 19, 2019.  These are summarized as follows:

| Applicant | Date of Order Granting Application | ECF # | Amount of Fees Approved | Amount of Costs Approved |
|---|---|---|---|---|
| J. Allen Kosowsky, CPA | 12/16/2010 | ECF #337 | $ 31,918.00 | $1,219.00 |
| J. Allen Kosowsky, CPA | 12/08/2011 | ECF #686 | $161,399.00 | $    69.05 |
| Betsy Anderson (real estate broker) | 05/24/2012 | ECF #884 | $  3,750.00 | $     .00 |
| J. Allen Kosowsky, CPA | 01/14/2013 | ECF #1112 | $150,822.00 | $    59.70 |

| | | | | |
|---|---|---|---|---|
| J. Allen Kosowsky, CPA | 02/27/2014 | ECF #1271 | $120,065.00 | $ 72.88 |
| Aon Risk Solutions (forensic accountants) | 06/09/2015 | ECF #1346 | $ 45,777.00 | $ 167.90 |
| J. Allen Kosowsky, CPA | 07/08/2016 | ECF #1455 | $ 15,940.00 | $ .00 |
| J. Allen Kosowsky, CPA | 01/17/2018 | ECF #1490 | $ 5,048.00 | $ .00 |
| EBCS Marine Survey, LLC (surveyor) | 06/06/2019 | ECF #1664 | $ 663.00 | $ .00 |
| FTI Consulting, Inc. | 08/20/2019 | ECF #1764 | $212,996.27 | $ 848.10 |
| Osborne & Fonte | 07/02/2019 | ECF #1704 | $ 2,231.25 | $ 618.40 |
| KDR Appraisal Services | 07/19/2019 | ECF #1726 | $ 800.00 | $ .00 |
| Shectman Halperin Savage, LLP | 07/31/2019 | ECF #1749 | $ 1,745.00 | $ 250.00 |
| Darroweverett, LLP | 07/31/2019 | ECF #1750 | $ 1,554.00 | $ 160.00 |
| Nelligan, LLP | 09/17/2019 | ECF #1779 | $ 16,227.00 | $ 1,591.73 |
| Denison Yacht Sales | (pending) | (pending) | (pending)[4] | (non-applicable; see footnote 4, supra) |

Exclusive of the amount involved with the pending application, the total amounts awarded to the other professionals for fees and costs, respectively, are $770,935.52 and $5,5056.76.

The Trustee's most recent status report, dated July 3, 2019 (see ECF #1709 in the main case, 09-23370-JAM, appended hereto as Exhibit G), contains the following information:

- At the time of the filing of the debtors' involuntary cases, their creditors were owed approximately $12 million. Id., p. 1

---

[4] The amount sought is $6,000 in fees, and zero in expenses.

- The Trustee has recovered $19,213,869.82, of which $18,428,716.34 was recovered through his prosecution of approximately 200 adversary proceedings. Id., p. 2

- Near the end of calendar year 2012, the Trustee made an interim distribution of $8,354,651.01 to creditors, which he has quantified as a 27.5% distribution.[5] Id., p.5

By late 2012, the Trustee's counsel had been awarded compensation of $4,701,794.23 (subject to a holdback of $470,179.43) in fees and $178,703.40 in expenses. This represents a fee approximating 36% of the total of the amounts distributed to creditors plus the amount of the approved fees, well in line with a typical 1/3 recovery.

From that point, forward, however, the Trustee made no further distributions to creditors and instead, embarked upon a protracted, ill-considered and unproductive course of litigation, dissipating the estate of another $3,701,179.74 in counsel fees and $90,829.19 in expenses incurred by his counsel. Moreover, of the other professionals who submitted fee applications, it appears that $423,046.52 in fees and $3,709.01 in expenses were incurred *after* the solitary payment to the creditors had been made. Meanwhile, the estates' creditors, the so-called "Goldberg Victims," have not received one penny in the past seven years. In fact, of the 173 adversary proceedings that were brought by the Trustee and subsequently closed, 113 of those cases (67.6%) were closed by the end of 2013, as noted on the attached 18-page excerpt from the Court's live database, appended hereto as Exhibit H.

If the Trustee were a conventional client, he would never tolerate such profligacy by his lawyer, given the conspicuous absence of any return whatsoever on his investment. This highlights the abject injustice of the Trustee's position in seeking a permanent stay of the

---

[5] It is unclear what the 27.5% figure represents. If the distribution were 27.5% of the amount owed to creditors, that would mean that the total amount owed to creditors was $30,380,549, more than 2½ times the $12 million figure provided on page 1 of the status report.

proceedings. Landino has received an invoice from the undersigned counsel nearly every month since May of 2016, an invoice that he is expected to pay in full. In stark contrast, the Trustee, by utilizing the law firm at which he is a member, has the luxury of never having to come out of pocket to pay his legal bills. Only now, that the estate has been bled dry by the Trustee's reckless, fruitless and improvident crusade of litigation have he and his lawyers agreed to work on an alternative fee basis (as if they had any choice). Landino, as a defendant, does not have the luxury of being able to retain counsel on a contingency basis.

The willingness to work on an alternative fee basis is not altruism on the Trustee and his counsel's part. It is desperation, the legal equivalent of the fourth down, fourth quarter "Hail Mary" pass into the endzone. The Trustee and his lawyers deliberately opted to forego any further distributions to their creditors, choosing instead to embark upon the questionable path of further litigation that has drained the estates of its assets. Rather than deal with the stark reality of the prospect of the Landino Entities prevailing on the Motion for Summary Judgment, they instead are seeking to pivot into their latest outlandish claim as embodied in the RICO Complaint.[6] In that action, they have 15 new parties to subject to their scorched-earth, no-holds barred approach to litigation—15 new parties to wear down in their relentless pursuit of feckless claims. This type of unbridled, unchecked behavior by a Trustee and his lawyers should not be rewarded by permitting them to sidestep the Landino Entities' Motion for Summary Judgment, and instead, embark upon a new course of protracted, expensive and reputationally-damaging litigation.

---

[6] The Trustee contends that it "is highly unlikely" that the Landino Entities will prevail on their Motion for Summary Judgment. See Motion for Permanent Stay, p. 6, ¶20. If the Trustee is so confident in his ability to predict this Court's ruling, then why is he doing everything in his power to prevent the adjudication of that motion?

Contrary to the Trustee's naked, unsupported contentions that the granting of the Landino Entities' Motion for Summary Judgment will not "provide [Landino] with a basis to dismiss the RICO claim asserted against him" (Motion for Permanent Stay, p. 6, ¶20), a careful examination of the factual allegations asserted against the Landino Entities in this action reveals that they are identical to the factual allegations in the RICO Complaint. Save for the addition of numerous conclusory statements that Landino's action in perpetrating the same allegedly fraudulent conveyances as are alleged in this proceeding constitute the engagement in the enterprise required for a RICO claim, there is nothing different substantively in the allegedly actionable behavior found in the two documents. Therefore, a finding by this Court that the Landino Entities did not engage in fraudulent transfers would entirely erode the basis for any predicate acts required to demonstrate a RICO violation in the RICO action.

E.     *The fact that the non-Landino Entity parties to this action, as well as the defendants in the other adversary proceedings filed by the Trustee, have consented to a permanent stay is irrelevant and immaterial to the issue of whether the stay should be permanent as to the Landino Entities in this matter.*

The Trustee apparently seeks to bootstrap either (a) the action of this Court and another judge in other actions ordering a stay and/or (b) the acquiescence to the permanent stay by the non-Landino Entity parties whom he has sued in this case as well as in other litigation that he has initiated. See Motion for Permanent Stay, p. 4, ¶¶12 – 14. This is a meaningless point, as if to suggest that, merely because other Courts have imposed a permanent stay, or because other parties have agreed to a permanent stay, it is unreasonable for the Landino Entities to decline to do so. What the Trustee fails to appreciate (and, likewise, fails to mention) is that none of these parties has filed a Motion for Summary Judgment in their respective proceedings.

In fact, the non-Landino Entity defendants in *this* action have declined to propound written discovery, notice depositions or attend any depositions, other than LaBonte's (which, necessarily meant that he would need to participate in that proceeding). It is entirely possible that such parties recognize that they lack any viable defenses in those actions, so they prefer to engage in the RICO proceeding, which could easily take several years to conclude. Their priorities and objectives are not those of the Landino Entities, however, and the latter should not be mindlessly lumped in with the former, just for the sake of mere convenience.

In short, there is nothing efficient or expeditious about permanently deferring action on a motion that could conclude this case for the Landino Entities, as well as provide a basis for dismissing the RICO action against Landino, so that a lengthy, complicated and expensive District Court action, filed barely a month ago against 17 defendants, can work its way through a complex, time-consuming process.

F.    *The Trustee's contentions, notwithstanding, the <u>Briscoe</u> factors weigh heavily* ***against*** *the imposition of a permanent stay in this action.*

In perhaps the most tortured analysis undertaken by the Trustee in this matter to date, he attempts to fit the proverbial square peg into the round hole by arguing that the factors outlined by the Second Circuit in <u>Briscoe v. City of New Haven</u>, 2009 U.S. Dist. LEXIS 119948 (D.Conn. 2009) actually support his position. Nothing could be further from reality.

First, the private interests of the plaintiff in proceeding expeditiously actually tilts markedly in favor of the resolution of the summary judgment motion in this case. The findings of this Court, one way or the other, will likely have a significant impact on the adjudication of the same factual issues presented in the RICO case. Given that the parties in this matter actively litigated this case for 2½ of the 3½ years it has been pending, there is a substantial trove of

discovery material to be utilized in the adjudication of the Landino Entities' summary judgment motion. In contrast, with 15 new parties in the RICO case, where the Rule 26(f) conference just occurred last week, that matter is in its infancy. There is nothing remotely efficient about abandoning this case, which could, conceivably, conclude promptly in the Landino Entities' favor, instead opting to embark upon a new and complicated matter in another forum.

Second, the interests of the Landino Entities and the concomitant burdens imposed upon them by a permanent stay likewise militate in favor of denying the Trustee's motion. The Landino Entities should not be punished for their promptness in filing their Motion for Summary Judgment *before* the deadline. Likewise, the Trustee should not be rewarded by being permitted to protract further this litigation which has been pending for nearly three and a half years.

Diligence is one thing. Dragging litigation out interminably is something wholly different. The Trustee has already subjected Landino to more than three and a half years of litigation, with all the attendant expense, stress, distraction and reputational loss that has accompanied it. The Trustee needs to observe some reasonable boundaries in his crusade to find money for this estate. It is submitted that he has already gone well beyond those boundaries in the prosecution of this matter, and to seek a permanent stay of this action is neither fair nor necessary.

Third, the interests of the courts would not be well served by a permanent stay. As noted, supra, the adjudication of the Landino Entities' Motion for Summary Judgment may actually promote the efficiency of, not only this action, but the RICO action itself, given the identity of the factual predicate in both lawsuits.

Fourth, the interests of other persons may be better served by the continuation of this action, particularly the adjudication of the Landino Entities' Motion for Summary Judgment. Should this Court find that the Landino Entities did not perpetrate fraudulent conveyances, such a finding would necessarily absolve their co-defendants, including LaBonte, from liability in this case. Furthermore, insofar as the RICO Complaint alleges that two non-parties to the present action, Attorney Lawrence Marks ("Marks") and his law firm, Juliano & Marks, participated in the fraudulent transfers allegedly undertaken by the Landino Entities (i.e., because of Marks and his law firm's representation of certain of the co-defendants in this action), a favorable finding for the Landino Entities could also dispose of some of the claims raised against Marks and his law firm in the RICO Action.

Fifth, the interest of the public would most decidedly *not* be served by staying this action permanently. Such an order would simply serve to embolden and encourage the Trustee and his law firm from continuing to engage in this abusive pattern of litigation in their seemingly interminable quest for "Cornonado's Gold." Their behavior is in serious need of reigning in, and this Court is in the best position to do so.

## CONCLUSION

If this Court grants the Trustee's motion, it is tantamount to sanctioning Landino to years of protracted, expensive, reputationally-harmful litigation in the District Court. At the very least, he and the other Landino Entities should be permitted to pursue the summary judgment motion that was filed more than a year ago. The Trustee and his lawyers should not be permitted to run roughshod over the rights of others by subjecting them to such debilitating litigation when a

{N5637875}                                         15

perfectly acceptable and expeditious alternative is available.  Accordingly, this Court is urged to deny the Trustee's motion.

THE DEFENDANTS,
ROBERT A. LANDINO; CENTERPLAN
CRANSTON, LLC; CENTERPLAN
NORTH HAVEN, LLC; CENTERPLAN
SMITHFIELD, LLC; CENTERPLAN
MIDDLETOWN, LLC; ACQUISITION
HOLDINGS, LLC; SIEBAR
MIDDLETOWN, LLC; CENTERPLAN
COLLEGE SQUARE, LLC; COLLEGE
SQUARE LLC

and THE COUNTERCLAIM PLAINTIFF,
CENTERPLAN NB, LLC


By: _____
Thomas J. Sansone, Esq.
Federal Bar No. ct00671
Carmody, Torrance, Sandak &
Hennessey LLP
195 Church Street, 18th Floor
P.O. Box 1950
New Haven, CT 06509-1950
Tel. No.:  203-777-5501
Fax No.:  203-784-3199
tsansone@carmodylaw.com

{N5637875}                                 16