UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

-----------------------------------------------------------x
In re:                                                              Chapter 7
Michael S. Goldberg, LLC and                            Case Nos. 09-23370-JAM
Michael S. Goldberg,                                                      09-23371-JAM
Debtors.

-----------------------------------------------------------x
James Berman, Chapter 7 Trustee for the
Estates of Michael S. Goldberg, LLC and            Adv. Proc. No. 16-02042-JAM
Michael S. Goldberg,
Plaintiff,
v.
Robert A. Landino, Scott A. LaBonte, Centerplan
Cranston, LLC, Centerplan North Haven, LLC,
Centerplan Smithfield, LLC, Centerplan
Middletown, LLC, Acquisition Holdings, LLC,    June 10, 2020
SAL Cranston, LLC, SAL North Haven, LLC,
SAL NH Investments, LLC, SAL Smithfield,
LLC, SAL Middletown, LLC, Siebar Middletown,
LLC, Centerplan College Square, LLC, College
Square LLC and Does 1-20,
Defendants.

-----------------------------------------------------------x

## OBJECTION OF THE DEFENDANTS, ROBERT A. LANDINO; CENTERPLAN CRANSTON, LLC; CENTERPLAN NORTH HAVEN, LLC; CENTERPLAN SMITHFIELD, LLC; CENTERPLAN MIDDLETOWN, LLC; ACQUISITION HOLDINGS, LLC; SIEBAR MIDDLETOWN, LLC; CENTERPLAN COLLEGE SQUARE, LLC; COLLEGE SQUARE LLC; AND THE COUNTERCLAIM PLAINTIFF, CENTERPLAN NB, LLC, TO THE TRUSTEE'S MOTION TO EXTEND EXISTING CASE MANAGEMENT ORDER DEADLINES (ECF #194)

**INTRODUCTION:**

The defendants, Robert A. Landino; Centerplan Cranston, LLC; Centerplan North Haven, LLC; Centerplan Smithfield, LLC; Centerplan Middletown, LLC; Acquisition Holdings, LLC; Siebar Middletown, LLC; Centerplan College Square, LLC; College Square, LLC; and the

{N5689874}

counterclaim plaintiff, Centerplan NB, LLC (collectively, "the Landino Entities"), respectfully object to the motion of the Trustee to extend the existing case management order deadlines (ECF #194). Specifically, the Trustee's motion should be denied because (a) he, himself, proposed the deadlines in the existing case management order at a time when he had already held the belief, for over a year, that pursuit of this action was pointless, (b) significant unfair prejudice will be visited upon the Landino Entities, particularly the defendant, Robert A. Landino ("Landino"), by any further delay, (c) the efficient use of the collective resources of the federal judiciary will be promoted by permitting this case to proceed in accordance with the current schedule and (d) the interests of certain third-parties may well be protected by the continued prosecution of this case.

**ARGUMENT:**

    *A. The Trustee had previously suggested the current deadlines at a time when he supposedly already knew of the purported futility of the continued prosecution of this matter.*

The primary justification for the Trustee's motion is that he should be permitted to procure this Court's adjudication of his Motion for Authority to Move to Dismiss Fraudulent Transfer Actions (hereinafter, "the Motion for Authority"), including this case, filed in the main case on February 28, 2020 (see 09-23370-JAM, at ECF #1812), before having to respond to the Landino Entities' Motion for Summary Judgment (ECF #144), filed exactly 20 months and one day ago on October 9, 2018.

The Trustee maintains that his filing of the Motion for Authority:

> … is perfectly consistent with the Trustee's position articulated to counsel to the Landino Defendants *in December, 2018*, when he delivered his draft Complaint alleging causes of action under the Racketeer Influenced and Corrupt Organizations Act … It is also perfectly consistent with the position stated by the Trustee's counsel during the *July 30,*

{N5689874}                                        2

> *2019* omnibus hearing before this Court wherein the Trustee's counsel informed the Court that (i) ... the fraudulent transfer actions did not offer any chance at recovery for the Estate and the Estate did not have the resources to continue to pursue what had become, as a result of SAL[1] and others, worthless claims, and (ii) the RICO action that the Trustee was going to commence against SAL and a number of others was the only viable avenue of recovery for the estate.

See ECF #194, at p. 4, Section C.8 (emphasis supplied). The Landino Entities agree with the foregoing statement, to the extent that the Trustee indicates that he has been complaining *since December of 2018* about what he perceives to be the futility of pursuing the above-captioned case, and that, through his counsel, he represented as much to this Court at a *July 30, 2019* status conference.

Stated differently, the Trustee, despite the stridency with which he has advanced his purported claim that pursuit of this action is futile, inexplicably waited 14 months from December of 2018 and seven months from July of 2019 before filing his Motion for Authority. More troublesome is the fact that the Trustee, during a telephonic hearing before this Court on January 14, 2020, affirmatively sought the extension of the case management deadlines for responding to the Landino Entities' Motion for Summary Judgment with dates *that he had proposed* to this Court on January 9, 2020 (see ECF #182). At no time during that 18-minute hearing did the Trustee's counsel even mention that he was intending to file the Motion for Authority, notwithstanding the fact that only six weeks later, he filed that very motion.

In short, the Trustee inexcusably delayed the filing of the Motion for Authority for more than a year after the time that he first realized that it was purportedly pointless to continue pursuit of this lawsuit. Not coincidentally, the Motion for Authority was filed only after the

---

[1] "SAL" is the abbreviation used for the Landino Entities' co-defendant in this matter, Scott A. LaBonte.

{N5689874}                                    3

defendants, including Landino, had moved to dismiss the RICO proceeding in the district court—a motion which, in part, relies upon the doctrine of ripeness in arguing that the Trustee may not prosecute the RICO claim until he has first exhausted his remedies with the litigation that he had previously instituted. Until then, the Trustee had been content simply to attempt *to stay* this case, not dismiss it altogether. Remarkably, it has become a matter of urgency to have the Motion for Authority adjudicated, no doubt because of the Trustee's desire to eliminate one of the arguments advanced by the RICO defendants in their Motions to Dismiss that action.

Now, as the clock is winding down on the very deadlines proposed by the Trustee in his submission to this Court (ECF #182), he wants yet another extension, claiming that his Motion for Authority should be adjudicated first. At the January 14, 2020 hearing, this Court made the following observation[2]: "I'm not going to let this Adversary Proceeding be managed by the lawyers, and have back-and-forth pleading issues under the Federal Rules of Civil Procedure. That's not going to happen. This case has been pending since 2016. It's going to get tried, one way or another—soon. Okay?" This Court could not have been clearer and more transparent in communicating to the parties the importance of managing this case in an efficient and timely fashion. It is surprising that, despite the clarity of the Court's statement, the Trustee now seeks yet another extension.

On this score, the Trustee appears to be suggesting that his willingness to prosecute the RICO lawsuit on a contingent fee basis should excuse him from responding to the Landino Entities' Motion for Summary Judgment in an adversary proceeding that he initiated against

---

[2] Owing to the Trustee's efforts to expedite the hearing on this motion (see ECF #195), the undersigned has not had an opportunity to obtain a written transcript of the January 14, 2020 hearing. Nevertheless, the entirety of that hearing can be found at ECF #184. The quoted remarks of the Court are found at 13:14 - 13:38 of the audiotape of the hearing.

{N5689874}  4

them. The Trustee contends that the scarce resources remaining in the debtors' estate should not be expended on the further prosecution of this adversary proceeding. See ECF#194, at p. 4, Section C.8. It is remarkable that, now that the estate is nearly emptied of its assets, the Trustee has suddenly decided to act frugally.

A cursory review of the numbers in the underlying bankruptcy case reveals the self-serving quality of the Trustee's representations in this regard. As the chart below indicates, the Trustee's counsel has made seven interim fee applications, the first six of which were subject to a 10% holdback on its fees:

| Date of Order Granting Application for Compensation | ECF # | Amount of Fees Approved | Amount of Costs Approved | Amount of Holdback |
|---|---|---|---|---|
| 12/16/2010 | ECF #336 | $ 597,346.00 | $ 22,433.77 | $ 59,734.60 |
| 12/12/2011 | ECF #695 | $2,042,276.00 | $113,604.17 | $204,227.60 |
| 12/06/2012<br>12/20/2012 | ECF #1058<br>ECF #1075 | $2,062,172.23 | $ 42,665.46<br>$105,027.60 | $206,217.23 |
| 04/04/2014 | ECF #1288 | $1,268,262.25 | $ 42,092.04 | $126,826.23 |
| 11/12/2015 | ECF #1395 | $1,266,075.00 | $ 26,602.41 | $126,607.50 |
| 12/13/2017 | ECF #1488 | $1,016,423.05 | $ 14,281.39 | $101,642.31 |
| 07/31/2017 | ECF #1751 | $1,646,930.50 | $ 49,945.39 | $            .00 |
| **TOTALS** | | $9,899,485.03 | $416,650.23 | $825,255.47 |

In addition to the foregoing amounts, 11 other professionals applied for compensation, all of whom have received orders granting their respective applications. These are summarized as follows:

{N5689874}                                                    5

| Applicant | Date of Order Granting Application | ECF # | Amount of Fees Approved | Amount of Costs Approved |
|---|---|---|---|---|
| J. Allen Kosowsky, CPA | 12/16/2010 | ECF #337 | $ 31,918.00 | $1,219.00 |
| J. Allen Kosowsky, CPA | 12/08/2011 | ECF #686 | $161,399.00 | $     69.05 |
| Betsy Anderson (real estate broker) | 05/24/2012 | ECF #884 | $    3,750.00 | $        .00 |
| J. Allen Kosowsky, CPA | 01/14/2013 | ECF #1112 | $150,822.00 | $     59.70 |
| J. Allen Kosowsky, CPA | 02/27/2014 | ECF #1271 | $120,065.00 | $     72.88 |
| Aon Risk Solutions (forensic accountants) | 06/09/2015 | ECF #1346 | $ 45,777.00 | $    167.90 |
| J. Allen Kosowsky, CPA | 07/08/2016 | ECF #1455 | $ 15,940.00 | $        .00 |
| J. Allen Kosowsky, CPA | 01/17/2018 | ECF #1490 | $    5,048.00 | $        .00 |
| EBCS Marine Survey, LLC (surveyor) | 06/06/2019 | ECF #1664 | $       663.00 | $        .00 |
| FTI Consulting, Inc. | 08/20/2019 | ECF #1764 | $212,996.27 | $    848.10 |
| Osborne & Fonte | 07/02/2019 | ECF #1704 | $    2,231.25 | $    618.40 |
| KDR Appraisal Services | 07/19/2019 | ECF #1726 | $       800.00 | $        .00 |
| Shectman Halperin Savage, LLP | 07/31/2019 | ECF #1749 | $    1,745.00 | $    250.00 |
| Darroweverett, LLP | 07/31/2019 | ECF #1750 | $    1,554.00 | $    160.00 |
| Nelligan, LLP | 09/17/2019 | ECF #1779 | $ 16,227.00 | $ 1,591.73 |
| Denison Yacht Sales | 11/19/2019 | ECF #1797 | $    6,000.00 | $        .00 |

The total amounts awarded to the other professionals for fees and costs, respectively, are $776,935.52 and $5,5056.76.

The Trustee's status report, dated July 3, 2019 (see ECF #1709 in the main case, 09-23370-JAM) contains the following information:

- At the time of the filing of the debtors' involuntary cases, their creditors were owed approximately $12 million. Id., p. 1

- The Trustee recovered $19,213,869.82, of which $18,428,716.34 was recovered through his prosecution of approximately 200 adversary proceedings. Id., p. 2

- Near the end of calendar year 2012, the Trustee made an interim distribution of $8,354,651.01 to creditors, which he has quantified as a 27.5% distribution.[3] Id., p.5

By late 2012, the Trustee's counsel had been awarded compensation of $4,701,794.23 (subject to a holdback of $470,179.43) in fees and $178,703.40 in expenses. This represents a fee approximating 36% of the total of the amounts distributed to creditors plus the amount of the approved fees, well in line with a typical 1/3 recovery.

From that point, forward, however, the Trustee made no further distributions to creditors and instead, embarked upon a protracted, ill-considered and unproductive course of litigation, dissipating the estate of another $3,701,179.74 in counsel fees and $90,829.19 in expenses incurred by his counsel. Moreover, of the other professionals who submitted fee applications, it appears that $423,046.52 in fees and $3,709.01 in expenses were incurred *after* the solitary payment to the creditors had been made. Meanwhile, the estates' creditors, the so-called "Goldberg Victims," have not received one penny in the past seven and a half years. In fact, of

---

[3] It is unclear what the 27.5% figure represents. If the distribution were 27.5% of the amount owed to creditors, that would mean that the total amount owed to creditors was $30,380,549, more than 2½ times the $12 million figure provided on page 1 of the status report.

{N5689874}　　　　　　　　　　　　　　　　7

the 173 adversary proceedings that were brought by the Trustee and subsequently closed, 113 of those cases (67.6%) were closed by the end of 2013, as noted on the Court's live database.

If the Trustee were a conventional client, he would never tolerate such profligacy by his lawyer, given the conspicuous absence of any return whatsoever on his investment. This highlights the abject injustice of the Trustee's position in seeking a further extension of the proceedings. Landino has received an invoice from the undersigned counsel nearly every month since May of 2016, an invoice that he is expected to pay in full. In stark contrast, the Trustee, by utilizing the law firm at which he is a member, has the luxury of never having to come out of pocket to pay his legal bills. Only now, that the estate has been bled dry by the Trustee's reckless, fruitless and improvident crusade of litigation have he and his lawyers agreed to work on an alternative fee basis (as if they had any choice). Landino, as a defendant, does not have the luxury of being able to retain counsel on a contingency basis.

The willingness to work on an alternative fee basis is not altruism on the Trustee and his counsel's part. It is desperation, the legal equivalent of the fourth down, fourth quarter "Hail Mary" pass into the endzone. The Trustee and his lawyers deliberately opted to forego any further distributions to the estates' creditors, choosing instead to embark upon the questionable path of further litigation that has drained the estates of their assets. They now seek to lay the blame for this result on the purported machinations of the many defendants whom they have sued, essentially claiming that those defendants have outsmarted them by keeping their assets beyond their reach.

Rather than deal with the stark reality of the prospect of the Landino Entities prevailing on the Motion for Summary Judgment, they instead are seeking to pivot into their latest

outlandish claim as embodied in the RICO Complaint. In that action, they have 15 new parties to subject to their scorched-earth, no-holds barred approach to litigation—15 new parties to wear down in their relentless pursuit of feckless claims. This type of unbridled, unchecked behavior by a Trustee and his lawyers should not be rewarded by permitting them to sidestep the Landino Entities' Motion for Summary Judgment, and instead, embark upon a new course of protracted, expensive and reputationally-damaging litigation.

And, while the Trustee may believe that the granting of the Landino Entities' Motion for Summary Judgment will not provide Landino with an additional basis to dismiss the RICO claim asserted against him, an even cursory examination of the factual allegations asserted against the Landino Entities in this action reveals that they are virtually identical to the factual allegations in the RICO Complaint. Save for the addition of numerous conclusory statements that Landino's action in perpetrating the same purportedly fraudulent conveyances as are alleged in this proceeding constitute the engagement in the enterprise required for a RICO claim, there is nothing different substantively in the allegedly actionable behavior found in the two documents. Therefore, a finding by this Court that the Landino Entities did not engage in fraudulent transfers would entirely erode the basis for any predicate acts required to demonstrate a RICO violation in the RICO action.

*B. Landino will be prejudiced by further delay in this case.*

Moreover, contrary to the Trustee's dismissive contention that no unfair prejudice will be caused to the Landino Entities by the granting of his motion (see ECF #194, at p.7, Section D.14) and the consequent delay in the adjudication of their Motion for Summary Judgment, Landino *is*

already being unfairly prejudiced. The Trustee should not be rewarded by being permitted to protract further this litigation which has been pending for more than four years.

During that four-year period, Landino, who earns his livelihood by, inter alia, many public works projects for governmental entities, has been repeatedly hamstrung in his ability to obtain credit to finance his real estate undertakings because of the existence of this lawsuit. Because he has had to disclose the existence of this litigation, in which he is accused of perpetrating multiple frauds, it has been extremely difficult for him to obtain working capital for his business or obtain government contracts. Compounding that is the September 2019 filing of the RICO action, labeling him as a conspirator in an enterprise to defraud the Trustee. See Affidavit of Robert A. Landino, ECF #151-7, previously filed in this case on November 6, 2018.

As if the expense, time and reputational injury of these actions is not enough, the Trustee has recently begun to undertake discovery in the RICO lawsuit, notwithstanding the pendency of the Motions to Dismiss that action filed by the several defendants therein, including Landino, as well as the pendency of a Motion to Stay Discovery, both of which are ready for adjudication by the district court (Bryant, J.). This includes the filing of a burdensome Request for Production on Landino. Apparently, the Trustee believes that he is justified in not responding to the Landino Entities' Motion for Summary Judgment while his Motion for Authority is pending because that might potentially create work for him that may ultimately be unnecessary, but he sees no problem in subjecting Landino and the other RICO defendants to the burdens of responding to his discovery in a case which may be dismissed at any moment, or in which the Court may order a stay of discovery. Such duplicity is repugnant to any rational concept of fundamental fairness.

    *C. Allowing this case to proceed as scheduled will effect a more efficient use of judicial resources.*

Furthermore, the interests of the courts would not be well served by a further extension. As noted, supra, the adjudication of the Landino Entities' Motion for Summary Judgment may actually promote the efficiency of, not only this action, but the RICO action itself, given the identity of the factual predicate in both lawsuits.

    *D. The interests of certain third-parties might be well served by the observance of this case's current case management deadlines.*

Finally, the interests of other persons may be better served by the continuation of this action, particularly the adjudication of the Landino Entities' Motion for Summary Judgment. Should this Court find that the Landino Entities did not perpetrate fraudulent conveyances, such a finding would necessarily absolve their co-defendants, including SAL, from liability in this case. Furthermore, insofar as the RICO Complaint alleges that two non-parties to the present action, Attorney Lawrence Marks ("Marks") and his law firm, Juliano & Marks, participated in the fraudulent transfers allegedly undertaken by the Landino Entities (i.e., because of Marks and his law firm's representation of SAL and certain SAL-controlled entities), a favorable finding for the Landino Entities could also dispose of some of the claims raised against Marks and his law firm in the RICO Action.

**CONCLUSION:**

The Trustee sees this case solely through the lens of his own self-interest. While there is nothing necessarily improper (or even objectionable) about such a perspective, in this instance, his preferences and his desires are not the drivers of this case's management. As this Court had emphatically stated at the January 14, 2020 hearing, the management of the docket is the unique

{N5689874}    11

province of the Court, not the litigants or their attorneys. The Trustee should not be permitted to walk back the very deadlines that he had proposed—at a time when the alleged exigencies necessitating the filing of his Motion for Authority had already been known to him for over a year. Likewise, the prejudice likely to be suffered by Landino militates against the granting of the Trustee's latest motion. And, finally, the interests of the Court and certain third-parties would be better served if this matter proceeded in accordance with the case's current deadlines. There have been six modifications of those deadlines; there is no good reason for a seventh.

        THE DEFENDANTS,
        ROBERT A. LANDINO; CENTERPLAN CRANSTON, LLC; CENTERPLAN NORTH HAVEN, LLC; CENTERPLAN SMITHFIELD, LLC; CENTERPLAN MIDDLETOWN, LLC; ACQUISITION HOLDINGS, LLC; SIEBAR MIDDLETOWN, LLC; CENTERPLAN COLLEGE SQUARE, LLC; COLLEGE SQUARE LLC

and THE COUNTERCLAIM PLAINTIFF, CENTERPLAN NB, LLC

By: /s/ Thomas J. Sansone
Thomas J. Sansone, Esq.
Federal Bar No. ct00671
Carmody, Torrance, Sandak & Hennessey LLP
195 Church Street, 18th Floor
P.O. Box 1950
New Haven, CT 06509-1950
Tel. No.: 203-777-5501
Fax No.: 203-784-3199
tsansone@carmodylaw.com